[Civ. No. 2862. Fourth Dist. Aug. 24, 1942.]

MARJORIE S. FRENCH, Appellant, v. BOARD OF EDUCATION OF THE UNIFIED SCHOOL DISTRICT OF THE CITY OF SAN DIEGO, Respondent.

Luce, Forward, Lee & Kunzel for Appellant.

Thomas Whelan, District Attorney, and Bertram McLees, Jr., Deputy District Attorney, for Respondent.

BARNARD, P. J.—The petitioner applied for a writ of mandate to compel the respondent to recognize her alleged status as a permanent teacher and to pay her salary for a period of time within the school year 1941-1942 during which she had not been assigned to a teaching position. Respondent's answer admitted that she had formerly held permanent status as a teacher in said district and alleged that this status had been terminated by her resignation. After a trial the court found in favor of the respondent finding, among other things, that petitioner's permanent status had been terminated by

her resignation, which was voluntary and not procured by fraud, coercion or duress. From the judgment which followed the petitioner has appealed.

There is no dispute as to the material facts. In 1934, the appellant was and for some years had been a teacher in respondent district with permanent tenure. She and her husband were living in San Diego but during the preceding school year her husband had been employed as a teacher at Lakeside, some 21 miles from San Diego. During the summer of 1934, appellant and her husband approached the respondent with the request that the husband be given work as a probationary teacher in respondent district. They were informed that it was the policy of the respondent board not to give initial employment as teachers to a husband and wife at the same time. After some discussion, an understanding was arrived at between the parties for the purpose of enabling the husband to substitute himself for the appellant as the member of the family having permanent status in said district. To this end, and in order to maintain her permanent status until her husband acquired tenure, it was understood and agreed that the husband would be employed on the condition that the appellant would take annual leaves of absence during his probationary period, and that she would resign her position as a permanent teacher if and when he acquired tenure. Incidentally, it appears that the appellant was suffering from tuberculosis for several years from and after 1934, although she testified that she did not know that she had this disease until December of that year.

Pursuant to this agreement, the terms of which were set forth in letters exchanged between the parties, the husband taught in this district the next three years, and each year the appellant was granted a leave of absence upon her written application in which she mentioned the understanding. For some reason which does not appear in the record the husband was not reemployed for the school year 1937-1938. During that year the appellant was assigned to a half-time teaching position upon her written request in which she said: "My physician says that it must be in the morning as he would like me to rest in the afternoons." Beginning with the next year, however, the understanding previously arrived at was reinstated by mutual consent and the appellant took annual leaves of absence and her husband was employed as a probationary teacher for the three school years between July, 1938, and June, 1941.

In March, 1941, the respondent's superintendent wrote to the appellant notifying her that her leave of absence would soon expire and requesting information as to whether or not she was planning to teach the next year. She called on the superintendent and was told by him that she would have to resign because her husband was on the list to be made permanent and that if she did not resign he would not hire her husband. She replied that she did not want to resign and was told that she could either go back to teaching or that she could resign and that her husband would be employed. Some days later, after further discussions with her and with her husband, she sent in her written resignation to take effect "at such time as my husband is made permanent" and in which she also said: "I am resigning because my husband would not become permanent unless I resign." This was accompanied by a letter to the respondent board in which she stated that she was tendering her resignation as a teacher; that she was resigning "to insure my husband's permanent status, upon request of the superintendent"; that "I wish my resignation to become effective at such time as my husband is made permanent"; and that "I do not want to sever relationships with the schools and I hope the board will reconsider my reemployment as a teacher."

After discussing this resignation the board instructed one of its members to talk the matter over with Mr. and Mrs. French and her father. This he did and at this conversation this board member asked the appellant if she really intended to resign and if there were any strings attached to the resignation. She replied that she wanted to resign, that she wanted to be sure that her husband would get tenure, and that she intended to stop teaching at any rate upon her husband's getting tenure. When the board member asked her why she sent the resignation in in that form she replied: "I wanted to be sure my husband will have permanent status." After some further discussion along this line she expressed a desire to occasionally do some work if called upon and this board member told her that he did not see why this could not be done after a time although, as he testified, he made no promises to her.

Her written resignation was dated April 28, 1941, and it was accepted by the respondent at a board meeting on May 6, 1941, and at the same meeting the appellant's husband was employed for the next year and he began his work in September, 1941, thus attaining permanent status. On September

10, 1941, the appellant wrote to the respondent stating that she was in good health and requesting an assignment to teach, naming her preference as to schools. She was not assigned as such teacher and this proceeding followed.

The appellant contends that the findings to the effect that she had resigned her position are not supported by the evidence for the reason that the evidence discloses that the purported resignation was void and ineffectual for any such purpose. No cases are cited which are particularly helpful. The appellant cites *Dutart* v. *Woodward*, 99 Cal. App. 736 [279 Pac. 493], and states that the facts therein cannot be distinguished from those in the instant case. In that case it was held that a teacher with a permanent status could not be penalized for marrying by transferring her to a position in a distant tuberculosis sanitarium. We see no similarity, factually or with respect to the principles involved, between the two cases.

The first point specifically presented is that "the resignation was invalid as against public policy." It is first argued that appellant's resignation was based wholly upon the consideration that her husband be employed as a teacher; that the qualifications of the appellant or of her husband played no part in the matter; that teachers are supposed to be selected wholly upon their qualifications; and that the respondent board acted contrary to our educational ideals and violated its duty to the public in thus making a "deal" for the employment of a teacher without regard to his qualifications. It in no way appears that the husband's qualifications were not considered, and it was arranged so that the appellant could retain her status until he proved that his qualifications justified his being retained long enough for him to acquire tenure. The appellant states that she does not argue that the policy of not employing two members of the same family is against public policy, but that she "does argue that a resignation is a contract and the compelling of the resignation under the circumstances here involved constitutes the resignation a contract in violation of public policy." Just what it is that the appellant contends is against public policy is not very clear. While we have been developing a new double standard in this country in the sense of permitting, and even encouraging, both husband and wife to become full time wage earners it can hardly be said, thus far, that it is against public policy for an employer to be a party to an agreement under which a wife is to resign a position in order that her

husband may secure an employment which he could not otherwise obtain. The real question in this case is not one of public policy in the sense contended for, but is as to whether or not the appellant's resignation was given as a result of an unlawful coercion or compulsion.

 Some contention is made that there is no evidence to sustain the finding that the respondent board had established a policy of not employing, initially, both a husband and wife as teachers. It is argued that the evidence shows that no resolution to that effect was ever adopted by the board, and that certain testimony shows that the policy followed was merely not to encourage such employment. The minutes of the board show that this matter had been rather extensively discussed; at least three witnesses testified that such a policy had been and was being followed; it clearly appears that the appellant was advised of the situation and that such a policy was carried out insofar as her husband is concerned; and that he would not have been given employment in the first place or allowed to obtain permanent status except for the agreement made. The evidence is sufficient to support the finding.

 Appellant's main contention is that her resignation was and is void because it was given under compulsion. It is argued in this connection that throughout the controversy the respondent has overlooked the fact that both appellant and her husband have "vested rights" to their status under the Teacher's Tenure Act; that both "are entitled to permanent status"; that the respondent could not "arbitrarily deprive" either of them of their permanent tenure; and that, therefore, appellant's resignation was secured by compulsion and coercion and is ineffective. In effect, it is contended that she has been deprived of her tenure without her real consent since her resignation was not necessary in order to enable her husband to secure tenure, as he was also entitled to tenure, with a vested right thereto.

The fallacy in this part of the argument lies in the assumption that her husband was entitled to tenure without regard to whether or not she resigned. It clearly appears that he would not have been originally employed but for this agreement between the parties; that he would not have been reemployed each year but for her continued compliance with its terms; and that he would not have been retained after the completion of his probationary period had she not resigned. Had he not been reemployed for the year 1941-1942 he would

not have acquired tenure or become entitled thereto. He did not acquire his right to tenure until after she resigned and he was then permitted to acquire tenure only because of her resignation.

There was no compulsion here in either a legal or equitable sense. The appellant was free to make her own choice, which she did. She fully understood the matter from the beginning and not only chose at that time, but probably then intended to follow it to completion, the course which she pursued to the desired final conclusion. Toward the end, while she did not regret the choice she had made and still wanted to abide by it if necessary in order to gain permanent status for her husband, she desired, if possible, to secure an additional benefit with a resulting elimination of all element of choice, past or present. When she found that she could not get this additional benefit, to which she was not entitled as a matter of right, she resigned in order to accomplish her main purpose. The respondent took rather unusual precautions to make sure that she desired and intended to exercise her choice in that manner. It clearly appears that she very much preferred to secure tenure for her husband, rather than keep it for herself, if only one of them was to be allowed to have tenure. The respondent was under no obligation to take the remaining step which would enable her husband to acquire tenure. It is not claimed that anything was at any time misrepresented to her. With full knowledge she exercised a free choice between two situations either of which, but only one of which, was available to her. The only element of compulsion assigned to respondent is its refusal to do something it was under no obligation to do unless she did something which she had agreed to do. Even in this regard the appellant was given the opportunity to abandon the agreement and to retain her own tenure if she so desired. She was left free to choose which course she desired to pursue, she voluntarily chose the benefit and course which she at all times had most desired, and no coercion or compulsion appears.

No evasion of the Tenure Act here appears. For her own purposes and of her own volition the appellant was allowed to substitute tenure in her husband for her own tenure rights, which she gave up to that end. We are not impressed with the argument that the equities of the case are entirely in favor of the appellant. If there was anything wrong with the making and performing of this agreement the most equitable thing to do would be to put the parties back where they were,

restoring her tenure and taking away his. Not only is this not now possible since the husband's employment has been continued beyond the probationary stage, but this is exactly what she does not want and what she most wants to avoid. He has now acquired tenure because of the respondent's reliance upon her agreement and her performance of its terms. She expressed no dissatisfaction with the arrangement for seven years. She confirmed her resignation when the respondent investigated before accepting it. She was careful not to withdraw her resignation until it had enabled her husband to acquire a position which he would have been otherwise unable to obtain and which cannot now be changed, and she not only desires to keep what she obtained through the agreement but now seeks to repudiate the same in order to gain a further benefit.

The judgment is affirmed.

Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 22, 1942.